UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. KITCHEN,

    Plaintiff,

v.

RICHARD SNYDER,
HEIDI WASHINGTON, and
MICHAEL EAGEN,

    Defendants.

Case No. 18-11430
Honorable Laurie J. Michelson
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT [15]**

In 1987, when Michael Kitchen was 17 years old, he was convicted of felony firearm, armed robbery, and criminal sexual conduct. Kitchen was sentenced to 42 to 60 years in prison. Whether Kitchen will spend closer to 42 years in prison or closer to 60 years in prison is in the hands of Michigan's parole board. But under Michigan Compiled Laws § 791.234, Kitchen cannot even come before the board until he completes his minimum sentence, i.e., until he has served 42 years in prison (less good-time credits he's earned). Currently, that is slated for November 2026; Kitchen will be 57 years old.

Kitchen believes that § 791.234 is unconstitutional as applied to him. He stresses that he committed the offenses leading to his sentence when he was only 17 years old. Yet, says Kitchen, § 791.234 does not distinguish between those who committed crimes as adults and those who committed crimes as minors. In other words, § 791.234 fails to account for what the Supreme Court calls the "mitigating qualities of youth," *Miller v. Alabama*, 567 U.S. 460, 476 (2012). Thus, Kitchen says that § 791.234 violates the Federal Constitution in three ways and the Michigan

Constitution in one. (*See* ECF No. 20, PageID.123–125.) As relief, Kitchen would like the Court to declare § 791.234 unconstitutional as applied to him; he would also like parole evaluation earlier than someone serving a like sentence but who committed the underlying crime as an adult. (*See* ECF No. 20, PageID.126.)

Two of the three defendants, Heidi Washington (the Director of the Michigan Department of Corrections) and Michael Eagen (the Parole Board Chairperson), ask the Court to dismiss Kitchen's complaint for lack of subject-matter jurisdiction. (ECF No. 15.) For this argument, they point to *Heck v. Humphrey*, 512 U.S. 477 (1994). Washington and Eagan also seek summary judgment under Rule 56, primarily asserting that *People v. Wines*, 916 N.W.2d 855 (Mich. Ct. App. 2018), precludes Kitchen's claims.

For the reasons that follow, Washington and Eagen's motion will be denied.

**I.**

Before turning to the merits of Defendants' *Heck* argument, the Court notes that Defendants may not have used the correct procedural vehicle to bring it. While the law is not entirely uniform, a defendant's argument that a plaintiff's claim is barred by *Heck* is probably not a challenge to subject-matter jurisdiction and probably should be brought via Rule 12(b)(6). *See Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018); *Topa v. Melendez*, 739 F. App'x 516, 518 (11th Cir. 2018); *Mendia v. City of Wellington*, 432 F. App'x 796, 798 n.1 (10th Cir. 2011); *Polzin v. Gage*, 636 F.3d 834, 837–38 (7th Cir. 2011); *but see Spencer v. Gidley*, No. 15-11822, 2015 WL 4642904, at *4 (E.D. Mich. Aug. 4, 2015). Here, though, the Rule 12(b)(1) or 12(b)(6) distinction does not matter—Defendants' *Heck* argument does not warrant dismissal.

The Defendants' argument is as follows. Kitchen challenges a statute that provides (in relevant part), "a prisoner sentenced to an indeterminate sentence and confined in a state

2

correctional facility with a minimum in terms of years . . . is subject to the jurisdiction of the parole board when the prisoner has served a period of time equal to the minimum sentence imposed by the court . . . less good time and disciplinary credits, if applicable." Mich. Comp. Laws § 791.234(1). Given that § 791.234 equates a prisoner's minimum-sentence end date with the first date he is eligible for parole review, Defendants argue that by asking for an earlier parole-evaluation date, Kitchen is seeking to shorten his minimum sentence. But under *Heck*, "a prisoner in state custody cannot use a § 1983 action to challenge the . . . duration of his confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). So, Defendants' conclude, Kitchen's constitutional challenges brought via § 1983 are *Heck*-barred.

Defendants' argument has some legal and factual support.

Start with legal. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court explained that when a prisoner seeks release from unlawful imprisonment, a petition for a writ of habeas corpus under 28 U.S.C. § 2254 is the better tool than a complaint under 42 U.S.C. § 1983. After all, the language of § 2254 is tailored to challenges of unlawful imprisonment, a petition for a writ of habeas corpus is the traditional means of challenging unlawful custody, and a petition for a writ requires exhaustion, which in turn, respects state sovereignty. *See Preiser*, 411 U.S. at 486, 490–491; *Wilkinson*, 544 U.S. at 78–79. Indeed, in *Wilkinson*, Justice Kennedy asserted that "it is elementary that habeas is the appropriate remedy for challenging a sentence," 544 U.S. at 88, and the majority apparently agreed with Justice Kennedy on this point, *id.* at 83.

Factually, Kitchen at least indirectly challenges his sentence. To be sure, Kitchen directly challenges only the parole-jurisdiction statute, § 791.234. But a premise of Kitchen's challenge is that his sentencing judge did not consider his youth and maturity in imposing a 42-year minimum sentence. For, if the sentencing judge did consider Kitchen's youth and maturity in setting the 42-

year minimum sentence, it is difficult to see how § 791.234 deprives Kitchen of any constitutional right: his youth would have already been factored into his parole-eligibility date.

Despite that legal and factual support for Defendants' position, the Court still finds that Kitchen is not required to bring his federal constitutional claims via a petition for a writ of habeas corpus and that *Heck* does not bar Kitchen's § 1983 complaint. In *Wilkinson*, William Dotson and Rogerico Johnson filed a suit via § 1983; Dotson sought an order "requiring prison officials to grant him an 'immediate parole hearing'"; Johnson likewise sought "a new parole hearing." 544 U.S. at 77. The Supreme Court explained that success for Dotson would "not mean immediate release or a shorter stay in prison; it [would] mean[] at most new eligibility review, which may speed *consideration* of a new parole application." *Id.* at 75. And the same was true for Johnson: "Success for Johnson means at most a new parole hearing at which parole authorities may, in their discretion, decline to shorten his prison term." *Id.* "Because neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus.'" 544 U.S. at 75. As such, Dotson and Johnson could proceed under § 1983 rather than § 2254. *Id.* at 76; *see also Hill v. Snyder*, 878 F.3d 193, 209 (6th Cir. 2017) (finding that prisoners' successful challenge to parole-consideration process would not necessarily result in less time in prison because parole board could still deny parole).

*Wilkinson* coupled with Michigan's indeterminate sentencing scheme carries the day for Kitchen. Even if Kitchen's direct attack on § 791.234 is an indirect attack on his 42-year minimum sentence, a successful attack will not necessarily speed Kitchen's release from prison. Suppose Kitchen's § 1983 complaint results in a new minimum sentence where he is given a 34-year minimum. That would only mean that Kitchen would immediately come within the parole board's jurisdiction. Yet the parole board could deny parole and, ultimately, Kitchen could be forced to

serve his maximum sentence, 60 years. So success here—even if that success comes in the form of a new, shorter minimum sentence—would not *necessarily* speed Kitchen's release. That would all depend on what the parole board does. As such, *Heck* does not preclude Kitchen from pursuing his federal constitutional claims via § 1983. *See Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) ("Because success in his § 1983 claim would not necessarily affect the duration of his sentence because prison officials would retain discretion regarding whether to grant him parole, the habeas exception does not bar Wershe's § 1983 claim." (internal quotation marks and alteration omitted)).

**II.**

Defendants also say Kitchen's claims fail on the merits.

Here too, there is the threshold issue of the correct procedural vehicle for Defendants' argument. As noted, Defendants have moved for summary judgment. This strikes the Court as odd because no discovery has been conducted in this case, Defendants' purely legal argument is suited for Rule 12(b)(6), and this District's local rules permit only one summary-judgment motion as of right. *See* E.D. Mich. LR 7.1(b). But, again, the procedural vehicle does not matter: Defendants' have not persuaded the Court to dismiss Kitchen's case.

Defendants acknowledge that the Eighth Amendment, as construed in *Miller v. Alabama*, 567 U.S. 460 (2012), requires a judge to consider a juvenile offender's maturity (and the like) before sentencing the juvenile to life in prison without the possibility parole. *See id.* at 477–78. But in Defendants' view, the Eighth Amendment's requirement that a sentencing judge consider the offender's youth is triggered "only" if the juvenile offender is facing the state's "most severe punishment." (ECF No. 15, PageID.85.) And here, Defendants point out, Kitchen was not and is not facing Michigan's most severe penalty (life in prison without parole). So, Defendants

conclude, the Eighth Amendment does not require that Kitchen's youth at the time of the offense to be considered in imposing a 42- to 60-year sentence.

Defendants have some support for their position. For one, in *Miller*, the Supreme Court was concerned about "imposing a State's harshest penalties" without considering the mitigating factors of youth. *See Miller*, 567 U.S. at 477; *see also id.* at 474 (explaining that prior precedent established that the "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children").

For two, Defendants have *People v. Wines*, 916 N.W.2d 855 (Mich. Ct. App. 2018). There, Gregory Wines was convicted of aiding-and-abetting a murder and, under Michigan's then-existing statutory scheme, automatically sentenced to life in prison without parole. *See id.* at 859–60. Wines was 17 years old at the time of his offenses. *See id.* at 859. About 23 years later, Wines was resentenced pursuant to legislation passed to account for *Miller*. *Id.* at 860. Under the new Michigan law, unless the prosecutor again sought life in prison without parole, the sentencing judge had to give Wines a minimum of 25 to 40 years in prison; Wines' maximum would automatically be 60 years per the new law. *Id.* at 856 (quoting Mich. Comp. Laws § 769.25a(4)(c)). The judge gave Wines the harshest minimum sentence—40 years. *Id.* at 860. Wines appealed, claiming that the judge did not consider the *Miller* factors in selecting 40 years. *Id.* at 857. The Michigan Court of Appeals held that the Eighth Amendment did not require the sentencing judge to consider the *Miller* factors: "We agree with the prosecution that the constitutional holding in *Miller* applied only in life-without-parole decisions and does not constitutionally compel a sentencing judge to consider only the factors defined in *Miller* when the sentence of life imprisonment without parole is not sought by the prosecution." *Id.* at 857.

So Defendants' assertion that the Eighth Amendment does not require Kitchen's youth to be considered in imposing a 42-year minimum sentence, and, thus, does not require his youth to be considered in setting his parole-evaluation date (they are one and the same), has some traction. Kitchen was not and is not facing Michigan's harshest penalty. And *Wines* seems to hold that the Eighth Amendment does not come into play when a judge imposes a 40-year minimum sentence on a juvenile offender.

Still, the Court is not completely persuaded by Defendants' argument. *Wines* offered no reasoning for its assertion that the Eighth Amendment does not require a sentencing judge to consider a convict's youth before imposing a long term-of-years sentence. *See* 916 N.W.2d at 857. And *Miller* referenced the State's harshest "penalties," 567 U.S. at 474, 477, which suggests the Supreme Court was not only concerned that the single harshest penalty might violate the Eighth Amendment. Indeed, consider a 50-to-60-year sentence. Depending on the prisoner's good-time credit, *see* Mich. Comp. Laws § 800.33, the prisoner's parole-eligibility date could still be after spending 40 years in prison. So if the offender started serving his sentence at 17, he would be 57 by the time he was even evaluated for parole. And actual release on parole could come years later. If life expectancy in prison is only 64 years (and still lower for those who begin prison at age 17), *see Wines*, 916 N.W.2d at 858 n.6 (referencing two studies), the 50-to-60-year sentence would approach a life-without-parole sentence. And if that is so, maybe imposing a 50-year minimum sentence without considering the offender's youth would give rise to Eighth Amendment concerns. *Cf. State v. Riley*, 110 A.3d 1205, 1213 (Conn. 2015) ("[W]e hold that the dictates set forth in *Miller* may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole.").

Ultimately, however, the Court takes no position on the plausibility of Kitchen's Eighth Amendment claim. This is not only because the Court is not yet convinced that *Miller* does not extend to the imposition of a very long term of imprisonment on a juvenile offender, but for three other reasons.

First, *Wines* suggests that Kitchen might be able to obtain relief under state law; and if that is so, there is no need to opine on the scope of the Eighth Amendment. Although *Wines* held that the Eighth Amendment did not require a judge imposing a 40-year minimum to consider the offender's youth, it did hold that it would be an abuse of discretion for the judge to not consider the offender's youth in imposing such a sentence. *See Wines*, 916 N.W.2d at 859 ("[W]hen sentencing a minor convicted of first-degree murder, when the sentence of life imprisonment without parole is not at issue, the court should be guided by a balancing of the [objectives set out in *People v. Snow*, 194 N.W.2d 314 (Mich. 1972)] and in that context is required to take into account the attributes of youth, such as those described in *Miller*."). Here, Kitchen's minimum is 42 years (and his crime was less severe than Wines'). At least arguably then, Kitchen's sentencing judge should have considered his youth in imposing the 42-year minimum. The complaint is silent on whether this was done, and so Kitchen may well have a viable claim for resentencing under *Wines*. And if that resentencing results in a 34- or 35-year minimum, Kitchen, having already served 32 years and having earned a couple years' worth of good-time credits, would get a seat before the parole board immediately. And that, practically speaking at least, is his end goal in this case. So state law, rather than the federal constitution, may provide Kitchen with relief. *Cf. Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136 (1946) ("If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional

question would make unnecessary a decision of the constitutional question, the former will be decided.").

Second, consider the flip side: that Kitchen's sentencing judge considered factors related to Kitchen's youth in selecting a 42-year minimum sentence. If that is so, then it would be the case that Kitchen's parole-eligibility date already accounts for the fact he committed his offenses at age 17. And it would seem to follow that the relief Kitchen seeks in this case—that his youth factor into his parole-eligibility date—has already been granted.

A third reason for not opining on the scope of the Eighth Amendment is that granting Defendants summary judgment on that claim would not end this case. Defendants' motion does not address Kitchen's claims under the Equal Protection Clause, the Due Process Clause, or Michigan's Cruel *or* Unusual Punishment Clause. So even if Kitchen's Eighth Amendment claims is subject to dismissal, this case would go on. Thus, practically speaking, there is no reason to place gloss on the Eighth Amendment right now.

Given that (1) *Miller* might extend to the imposition of a 42-year minimum sentence on a juvenile offender, (2) even if not, this case will go on, (3) Kitchen may be able to obtain satisfactory relief via resentencing (perhaps through Mich. Ct. R. 6.502), and (4) this case might be in a sense moot (if Kitchen's sentencing judge already considered his youth), the Court will deny without prejudice Defendants' motion. The Court sets this case for a mediation before the undersigned on October 8, 2019 at 1:00 p.m. Defendants are, to the best of their ability, ensure that an Oakland County prosecutor familiar with Kitchen's case attends the mediation. The Court will make arrangements with the Michigan Reformatory (RMI) for Kitchen to participate by phone.

**III.**

For these reasons, Defendants' motion (ECF No. 15) is DENIED WITHOUT PREJUDICE.

                                                    s/Laurie J. Michelson
                                                    LAURIE J. MICHELSON
                                                    UNITED STATES DISTRICT JUDGE

Date: August 16, 2019

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 16, 2019.

                                                    s/William Barkholz
                                                    Case Manager to
                                                    Honorable Laurie J. Michelson